233 P.2d 1044

PACIFIC GREYHOUND LINES v. ALABAM FREIGHT LINES et al.

No. 5365.

Supreme Court of New Mexico.

June 30, 1951.

W. C. Whatley, W. B. Darden, LaFel E. Oman, all of Las Cruces, for appellant.

A. W. Pollard, I. M. Smalley, Deming, for Alabam Freight Lines.

Woodbury, Shantz & Woodbury, Silver City, for Harry L. Chamberlain.

COMPTON, Justice.

This is an action by appellant to recover damages resulting from an automobile collision. Appellant's bus, an automobile driven by appellee Chamberlain, and a truck operated by appellee Alabam Freight Lines, were involved in a three-way accident.

The concurring negligence of appellees is charged as the proximate cause of the collision. Issue is raised by a general denial. The case was tried to the court which found appellees to be free from negligence and that appellant's damages resulted from an unavoidable accident. An appropriate judgment was entered from which appellant appeals.

In reviewing the record the evidence will be considered in the light most favorable to appellees, disregarding all evidence to the contrary. Mobley v. Garcia, 54 N.M. 175, 217 P.2d 256.

Appellant operates a bus line between El Paso, Texas, and Lordsburg, New Mexico, over U. S. Highway 70–80. There is an unusual number of narrow culverts on this particular highway, the location of which are designated by posts set on either side, slightly off the pavement. On the 8th day of November, 1945, about 10:00 A.M., Vernon Crowl, while driving one of appellant's busses in a westerly direction near Wilma, New Mexico, observed an automobile with house trailer attached, approaching from the west and about one half mile away, driven by appellee Chamberlain. He also observed a truck and trailer closely following the Chamberlain vehicle, operated by appellee Alabam Freight Lines and driven by Lloyd G. Taylor. The paved portion of the highway is 18 feet wide with gravel shoulders extending approximately four feet.

It became apparent to the bus driver that they would meet on one of these narrow culverts and to avoid doing so, he stopped his bus about 20 feet east of a culvert with the right-hand wheels about one and one half feet off the pavement. Chamberlain, who had been driving about 35 miles per hour, for like reason, reduced his speed some 150 feet west of the culvert, permitting his vehicle to coast. When he saw that appellant's bus was being brought to a stop he accelerated his speed and crossed the culvert, unaware that he was being followed by the Alabam Freight Lines truck and trailer. As his automobile and trailer were passing over the culvert, the truck driver, being unable to control his truck, ran into the rear end of the trailer, pushing

it forward, careening into appellant's bus. The truck came to rest on the north side of the pavement slightly east of the bus. The automobile and house trailer came to rest on the south side of the pavement, a short distance farther east, with the right-hand wheels off the pavement.

Some of the witnesses testified that the house trailer came to a stop on the culvert. The bus driver testified that the Chamberlain automobile was almost stopped but refused to estimate the speed. When asked if it were traveling 20, 25, or even 60 miles per hour he still declined to give an estimate. The truck driver also testified that the house trailer came to a stop, or nearly so. Chamberlain testified that he was traveling 25 miles per hour at the time of the collision but conceded 20 miles as the very minimum. He was accompanied by his wife who testified that they were then traveling 20 to 25 miles per hour. His automobile was equipped with a conventional seven inch extension rear view mirror.

The truck and trailer were carrying a capacity load of 30,000 pounds. It is down grade east of Lordsburg for several miles. Earlier that morning the truck driver overtook the Chamberlain automobile east of Lordsburg but was unable to pass it due to the terrain and the weaving of the house trailer, consequently he fell behind. He again overtook it east of Wilma, near the place of the collision. For a short time prior to the accident he had been following the Chamberlain automobile at a distance of approximately 100 feet but when the Chamberlain automobile reduced its speed he gained on it until his truck was within 60 to 70 feet of the house trailer. Thinking that the Chamberlain automobile was stopping and realizing that he could not stop his truck in such short distance he turned to the right, intending to go into the borrow ditch. The borrow ditch was three to four feet deep and six feet wide. Sensing the peril, he pulled his truck back onto the highway just west of the culvert, ran into the rear of the house trailer and then into appellant's bus. Markings on the pavement indicated that the truck driver applied his brakes 75 feet west of the culvert. It is not disputed that at the time of the impact with the house trailer, the truck was traveling approximately ten miles per hour.

Viewing the evidence in an aspect most favorable to appellees, it becomes obvious from their own testimony that they committed several negligent acts in violating the following statutory provisions:

"No person shall drive a motor vehicle on a highway which motor vehicle is so constructed or loaded as to prevent the driver from obtaining a view of the high-

way to the rear by looking backward from the driver's position, unless such vehicle is equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such vehicle." Section 68–614, 1941 Comp.

"(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement." Section 68–517, 1941 Comp.

"(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and condition of the highway.

"(b) The driver of any motor truck when traveling upon a highway outside of a business or residence district shall not follow another motor truck within one hundred (100) feet, but this shall not be construed to prevent one motor truck overtaking and passing another." Section 68–515, 1941 Comp.

Appellant, Chamberlain, at the time of the collision and prior thereto had been operating his automobile upon the public highway without providing the same with an adequate rear view mirror whereby he could see a distance of 200 feet to the rear of his vehicle. Also, he admits that he gave no signal that he was stopping or reducing his speed as he approached the culvert.

The driver of the Alabam Freight Lines truck admits that he followed the Chamberlain house trailer at a distance of 50 to 100 feet, immediately prior to the accident. He also admits that he was too close to the house trailer to bring his equipment under control when he observed that Chamberlain was stopping. The admissions by appellees are fatal. It is manifest that both appellees were guilty of negligence per se and that the accident proximately resulted from such negligence.

The judgment will be reversed with directions to the trial court to reinstate the case upon its docket, determine appellant's damages, and enter judgment accordingly.

And it is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and COORS, JJ., concur.